**Opinion filed March 17, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00147-CR

_____

## KAILY RENE WITTANEN ROSALES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR34879**

### M E M O R A N D U M   O P I N I O N

The jury convicted Kaily Rene Wittanen Rosales of the offense of manslaughter, made an affirmative deadly weapon finding, and assessed punishment at confinement for six years. We affirm.

Appellant presents two issues on appeal. Both are related to the sufficiency of the evidence that she was driving recklessly. In her first issue, appellant contends that the evidence was legally and factually insufficient to support her conviction. In the second, appellant contends that her due process rights were violated because her conviction was based upon a "lack of evidence" that she was driving recklessly.

We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful

distinction between the *Jackson v. Virginia*[1] legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review appellant's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

Appellant was charged with and convicted of manslaughter for recklessly causing the death of Patricia Hochman:

> [W]hile driving and operating [a] motor vehicle on a public road by driving at an excessive rate of speed, and by failing to keep a proper lookout, and by changing lanes in an unsafe manner, and by causing the vehicle operated by [appellant] to travel into an opposing lane of travel, and by a combination thereof, and hitting and striking and colliding with a motor vehicle occupied by Patricia Hochman.

She argues that the evidence is insufficient to show that she was driving recklessly because it showed that she was not speeding, changing lanes unsafely, or failing to keep a proper lookout but that she was merely avoiding an accident with another vehicle that was driving unsafely. We disagree with appellant.

The uncontroverted evidence shows that, around 4:20 p.m. on June 23, 2008, appellant was driving a red Ford Explorer southbound on Loop 250 when she lost control, went through the median, became airborne, and crashed into Hochman's northbound car. The front-end of the Explorer landed on the hood of Hochman's car, just below the windshield on the driver's side. The impact left gouge marks in the pavement from the frame of Hochman's car. Hochman was pronounced dead at the scene.

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[2] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

Four eyewitnesses to the collision testified at trial. Appellant's friend and passenger, Mysti Hudson, testified that appellant came to her house before noon, that they smoked some marihuana and hung out for a while, and that they left the house around 1:15 or 1:30 p.m. to go eat lunch. After they ate and went shopping, appellant had to go pick up her husband and children on the other side of Midland. When she pulled out of the parking lot, appellant "accidentally cut somebody [in a white car] off." Hudson testified that appellant was in a hurry and was not driving like she normally did but that she did not think appellant was speeding. Appellant had been switching lanes to pass people when she came upon a green pickup that was driving slowly. She put on her signal, slowed down, and moved into the left lane to pass the pickup. However, the pickup also moved into the left lane to let appellant pass, so appellant then moved back into the right lane – but so did the pickup. Appellant moved to the left to avoid hitting the pickup and lost control of her vehicle.

Phyllis Palmer testified that she was driving her orange Jeep southbound on the loop when she noticed that a red SUV was suddenly "right on" her. The SUV was "traveling so fast" that she thought it was going to rear-end another car, but instead the SUV went between Palmer's Jeep and the other car even though there was "no room" to do so. Palmer had to veer off the road and into the median to avoid the SUV. Palmer managed to maintain control of her vehicle and continued watching the SUV. The SUV continued weaving in and out of traffic, passing everybody. Palmer testified that the driver of the SUV needed to slow down and that the SUV was traveling at a "way greater" speed than Palmer, who was going slightly below the speed limit. As the SUV was weaving in and out of a cluster of cars ahead of Palmer, it fishtailed and the driver lost control. Palmer saw the SUV cross the median, flip, and "crush[] that car." Palmer testified that the driver of the SUV was driving in a manner that was "erratic" and "uncalled for" and that she was not merely avoiding other cars.

Brandon Spruill also witnessed the wreck. He was driving southbound on the loop when a speeding red Explorer passed him. He watched as it continued to pass other vehicles. He saw the SUV swerve over into the left lane and cut somebody off. The driver of the SUV passed some other vehicles and then lost control and "shot straight over into the median." The SUV was "sideways" through the median, "flip[ped] up" at the edge of the median, and then hit a car "dead on." Spruill described appellant's driving in one word: "Reckless."

Logan Nunez was also driving on the loop when he observed a young lady in a "[r]eddish" Explorer driving erratically. She was switching from "lane to lane" "in and out of

3

cars." Nunez saw the SUV run an orange Jeep off the road as the SUV weaved in and out of traffic. Nunez said that the driver of the SUV "jerked it . . . very hard to the left" and lost control of her vehicle. The SUV made a sharp left into the median, went airborne, and "nosedived" into the right front side of an oncoming vehicle, near the front windshield and the driver's mirror.

A registered nurse who stopped to render aid testified that the driver of the SUV was screaming and crying hysterically. The driver stated, "I've taken all those pills. He told me not to. Now I've killed somebody." The nurse thought that the driver appeared as though she were under the influence of drugs.

Sergeant Craig Matthews of the Midland Police Department was dispatched to the scene and then went to the hospital where appellant and Hudson had been taken. He identified appellant in court. Appellant told him that she was the driver of the red Ford Explorer involved in the wreck, though she had no driver's license or insurance. She also told him that she had smoked marihuana and taken a prescription medication earlier in the day.

Sergeant Matthews attempted to reconstruct the accident to determine appellant's speed at the time she began skidding. One test method revealed a speed of only 47 miles per hour. Sergeant Matthews did not believe that was accurate and concluded that the equipment used to determine the friction coefficient was not working properly. A second test method using equipment from the airport to determine the friction coefficient revealed a speed of 61 miles per hour. The speed limit on the loop was 60 miles per hour.

After reviewing all of the evidence, we hold that the evidence is sufficient to support the jury's finding that appellant was driving in a reckless manner when she caused the death of Hochman and that appellant's due process rights were, therefore, not violated by a lack of evidence. Appellant's first and second issues are overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE

March 17, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4